**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LISA RITTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | CIVIL ACTION NO. 4:23-cv-4117 |
| LINCOLN NATIONAL LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiff LISA RITTER, hereinafter referred to as "Plaintiff," brings this ERISA action against the LINCOLN NATIONAL LIFE INSURANCE COMPANY Group Welfare Benefits Plan, in its capacity as Administrator of the Toyota Motor Sales USA, Inc. Long Term Disability Plan, hereinafter referred to as "Defendant". Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant. Plaintiff is covered under the policy by virtue of her employment with Toyota Motor North America.

## PARTIES

2. Plaintiff is a citizen and resident of Randallstown, Maryland.

3. Defendant is a properly organized business entity doing business in the State of Texas.

4. The disability plan at issue in the case at bar was funded and administered by Defendant.

5. Defendant is a business entity doing business in the District of Texas. Defendant may be served with process by serving its registered agent, Corporation Service Company; 211 East 7th Street, Suite 620, Austin, Texas 78701

**JURISDICTION AND VENUE**

6. This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce her rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7. Venue in the Southern District of Texas is proper as the venue is stipulated in the Policy.

8. Venue is in the Southern District of Texas is proper by virtue of Defendant doing business in the District of Texas. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) Here, Defendant is "found" within the District of Texas, as it does

business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

9. At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. GF3-860-066615-01.

10. Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with Toyota Motor North America, with coverage beginning on January 1, 2015.

11. Said policy became effective January 1, 2015 and was delivered in the State of Texas.

12. At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

13. At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

14. Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

15. Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

16. Disability benefits under the Plan have been insured in accordance and

pursuant to Policy No. GF3-860-066615-01 issued by Defendant.

17. Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

18. Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

19. Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

**STANDARD OF REVIEW**

20. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

21. Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

22. In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

23. Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

24. Further, when a Defendant violates the Department of Labor regulations,

Defendant effectively forfeits its discretionary authority.

25. When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent *and* harmless. *Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ*., 819 F. 3d 42 (2nd Cir. 2016). See also *Fessenden v. Reliance Standard Life Ins. Co*., 927 F.3d 998, 1001-02 (7th Cir. 2019) and *Slane v. Reliance Stand. Life Ins. Co*., CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

26. Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i. Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii. Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii. Failure to follow Defendant's own claims procedures 29 C.F.R. § 2560.503-1(b);
iv. Failure to adopt guidelines to ensure that similarly situated claims are administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);
v. Failure to administrative Plaintiff's claim consistently 29 C.F.R. § 2560.503-1(b)(5);
vi. Failure to provide requested relevant documents timely. 29 C.F.R. § 2560.503-1(h)(2)(iii);
vii. Failure to describe the guidelines and protocols relied upon. 29 C.F.R. § 2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);
viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(iii);
ix. Failure to obtain an appeal review of a different non-subordinate medical professional. 29 C.F.R. § 2560.503-1(h)(3)(v);
x. Failure to obtain an appeal review that does not defer to the prior determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);
xi. Failure to obtain an appeal review that is conducted by a different non-

subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii. Failure to give a claimant an opportunity to review and refute the report of a reviewing physician obtained during the appeal review. 29 C.F.R. § 2560.503-1(h)(4);

xiii. Failure to take into account all comments, documents, records, and other information submitted to the claimant or by the claimant relating to the claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).

27. Defendant's violations of the regulations were not inadvertent or harmless.

28. Plaintiff contends that because Defendant failed to furnish a full and fair review, Defendant has relinquished its discretionary authority under the Plan.

29. Further, Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

**ADMINISTRATIVE APPEAL**

30. Plaintiff is a 58-year-old woman previously employed by Toyota Motor North America as an "Administrative Specialist."

31. Administrative Specialist is classified under the Dictionary of Occupational Titles as having a Light exertional level. This occupation also has an SVP of 7 and is skilled work.

32. This occupation was very demanding in that it required Plaintiff to coordinate collection and preparation of operating reports, such as time-and-attendance records, terminations, new hires, transfers and budget expenditures..

33. Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on March 18, 2020.

34. Plaintiff alleges that she became disabled on March 24, 2020.

35. Plaintiff filed for short-term disability benefits with Defendant.

36. Short-term disability benefits were approved and paid from 3/24/2020 to 9/29/2020.

37. Plaintiff filed for long-term disability benefits through the Plan administered by the Defendant.

38. The Plan defines "**Disability**" or "**Disabled**" as follows:

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation."*

39. The Plan defines "**Own Occupation**" as follows:

> *"**Own Occupation**" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Lincoln will considered the Covered Person's occupation as it is normally performed in the national economy."*

40. The Plan defines "**Any Occupation**" as follows:

> *"**Any Occupation**" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity."*

41. Long Term Disability benefits were approved from 9/29/2020 to 9/28/2022.

42. The Plan provides for monthly benefits of $2,516.00.

43. Defendant terminated Plaintiff's long-term disability benefits.

44. Defendant's termination letter said, "proof of your continued disability in accordance with the Policy provisions beyond September 28, 2022 has not been provided" under the Any Occupation definition and allowed Plaintiff 180 days to appeal

this decision.

45. Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of her own or any occupation related to her medical conditions.

46. Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect her appeal

47. On December 14, 2021, Plaintiff pursued her administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

48. Plaintiff timely perfected her administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

49. Plaintiff submitted additional information including medical records to show that she is totally disabled from the performance of both her own and any other occupation as defined by the terms of the Plan.

50. On or about August 1, 2022, Defendant's paid consultant, Farah Fatima, M.D., internal medicine, performed a peer review of Plaintiff's claim file.

51. On or about August 18, 2022, Defendant's internal consultant, Vanessa Scungio, MA, CRC, vocational case manager, performed a paper review of Plaintiff's claim file.

52. On or about October 25, 2022, Defendant's paid consultant, Albert F. Rielly, M.D. (Dr. Rielly), internal medicine, occupational medicine, public health and general preventive medicine, performed a peer review of Plaintiff's claim file.

53. On or about November 18, 2022, Defendant's paid consultant, William

Barreto, M.D. (Dr. Barreto), physical medicine and rehabilitation and pain medicine, performed a peer review of Plaintiff's claim file.

54. On or about November 23, 2022, Dr. Rielly prepared an addendum to his peer review of Plaintiff's claim file.

55. On or about December 12, 2022, Defendant's internal consultant, Lori Ashworth, M.Ed., CRC, vocational case manager, performed a paper review of Plaintiff's claim file.

56. On or about December 13, 2022, Dr. Barreto prepared an addendum to his peer review of Plaintiff's claim file.

57. Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a. The reviewers' opinions were infected by conflict and bias;

b. The reviewers' conclusions lack foundation and are conclusory;

c. The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d. The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e. The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f. The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g. The reviewers failed to acknowledge that medications neither effectively

resolved her pain nor were appropriate for long-term treatment of Plaintiff;

h. The reviewers based their opinions on summary reports of other underqualified opinions; and

i. The reviewers' conclusions were inconsistent with the weight of the evidence.

58. There is an indication that on or about May 21, 2020, a "Rebecca H, BSN, RN," nurse disability consultant, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

59. There is an indication that a paid consultant, "Robert A. Taylor, M.D.," internal medicine and pulmonary diseases, reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

60. Defendant's consultants completed their reports without examining Plaintiff.

61. Defendant notified Plaintiff that Defendant upheld its original decision to terminate Plaintiff's claim for long-term disability benefits.

62. Defendant also notified Plaintiff that Plaintiff had exhausted her administrative remedies.

63. Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on her ability to engage in work activities.

64. The Plan gave Defendant the right to have Plaintiff submit to a physical examination at the appeal level.

65. A physical examination, with a full file review, provides an evaluator with

more information than a medical file review alone.

66. More information promotes accurate claims assessment.

67. Despite having the right to a physical examination, Defendant did not ask Plaintiff to submit to one.

68. Plaintiff has now exhausted her administrative remedies, and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

**MEDICAL FACTS**

69. Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

70. Plaintiff suffers from arthritis; fibromyalgia; spinal stenosis; asthma; carpal tunnel syndrome; osteopenia; memory loss; post-traumatic stress disorder (PTSD); chronic major depressive disorder; and vertigo.

71. Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

72. Plaintiff's treating physicians have opined that Plaintiff is unable to work.

73. Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

74. Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed her ability to engage in any form of exertional activity.

75. Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address her multiple symptoms.

76. However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

77. Plaintiff's documented pain is so severe that it impairs her ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

78. Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

79. The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

80. As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

81. However, after exhausting her administrative remedies, Defendant persists in denying Plaintiff her rightfully owed disability benefits.

## DEFENDANT'S CONFLICT OF INTEREST

82. At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

83. Defendant's determination was influenced by its conflict of interest.

84. Defendant's reviewing experts are not impartial.

85. Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

86. Defendant knows, or has reason to know, that its in-house medical

consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

87. Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

88. Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

89. Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

**COUNT I:**

**WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132**

90. Plaintiff incorporates those allegations contained in paragraphs 1 through 89 as though set forth at length herein.

91. Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a. Plaintiff is totally disabled, in that she cannot perform the material duties of her own occupation, and she cannot perform the material duties of any other occupation which her medical condition, education, training, or experience would reasonably allow;

b. Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c. Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable,

arbitrary, and capricious; and

d. Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

**COUNT II: ATTORNEY FEES AND COSTS**

92. Plaintiff repeats and realleges the allegations of paragraphs 1 through 91 above.

93. By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees. Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A. Grant Plaintiff declaratory relief, finding that she is entitled to all past due long-term disability benefits yet unpaid;

B. Order Defendant to pay past due long-term disability benefits retroactive to September 28, 2022 through the present in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan, plus pre-judgment interest;

C. Order Defendant to remand claim for future administrative review and continue to make future long-term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D. Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E. For such other relief as may be deemed just and proper by the Court.

Dated: Houston, Texas
October 30, , 2023

Respectfully submitted,

MARC WHITEHEAD & ASSOCIATES,
ATTORNEYS AT LAW L.L.P.

By: _/s/ Anthony Vessel_____________

J. Anthony Vessel
Tex. Bar No. 24084019
Fed. I.D. No. 1692384
anthony@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
LISA RITTER